# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL SHERMAN        )
       )
     **Plaintiff,**        )
       )
      **v.**        )    **Civ. No. 2:14 - 572**
       )
**JOHN BROWN INSURANCE**        )    **Judge Maurice B. Cohill**
**INSURANCE AGENCY INC., et al.**        )
       )
     **Defendants.**        )
       )

## OPINION

In his Complaint [ECF No. 1-D], Plaintiff Michael Sherman ("Sherman") seeks recovery from Arturo Coronel ("Coronel"), John M. Brown ("Brown"), and John Brown Insurance Agency, Inc. and John M. Brown Insurance Agency, Inc.[1] (collectively "Agency") for damages sustained because of Defendants' negligence and breach of contract in procuring liability insurance to cover Sherman's building contracting operations. Plaintiff alleges negligence against Coronel (Count I), negligence against Brown (Count II), negligence against the Agency (Count III), vicarious liability against the Agency (Count IV), and breach of contract against Brown and the Agency (Count V).

In Response, Defendants filed a Motion to Dismiss [ECF No. 4] Counts I though IV of Plaintiff's Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon

---

[1] Plaintiff states in the Complaint that Defendants, John Brown Insurance Agency, Inc. and John M. Brown Agency, Inc., are registered under the laws of Illinois, and maintain their primary business at 800 N. Clark Street, Suite 215, Chicago, IL 60610.

which relief can be granted. For the reasons set out below, we deny Defendants' Motion to Dismiss with respect to all claims.

## I. Relevant Facts Alleged in Plaintiff's Complaint

In May 2011, in need of liability insurance to cover his building contractor operations, Plaintiff searched the internet, where he reviewed an advertisement published by or on behalf of the Agency, which "promoted the agency's expertise in placing coverage for building contractors." [ECF No. 1-4 at 5]. Plaintiff then teleconferenced with Coronel in May 2011. During this conference, Coronel represented himself to be an employee of the Agency, although he was not a licensed insurance producer under Pennsylvania law [ECF No. 1-4 at 5]. Plaintiff advised Coronel of the nature of his work and his interest in obtaining liability coverage to cover his contracting operations [ECF No. 1-4 at 5]. Coronel advised Plaintiff that the Agency could accommodate his request for liability coverage [ECF No. 1-4 at 5].

Around May 20, 2011 Coronel prepared an application allowing Plaintiff to obtain membership in the Preferred Contractors Association ("PCA") [ECF No. 1-D at 6]. Membership in PCA "presumably" would allow Plaintiff to acquire liability insurance coverage through Preferred Contractors Insurance Company, RRG,[2] LLC ("PCIC") [ECF No. 1-D at 6]. PCIC offered different policies to contractors, some of which included coverage for roofing operations; however, Plaintiff was never offered a policy that included roofing coverage [ECF No. 1-D at 6].

The PCA application was submitted to PCA and/or PCIC by Coronel and Brown containing a description of Plaintiff's contracting operations which allegedly was "incomplete and contrary to the representations that Sherman had made to Coronel regarding the nature of his

---

[2] A Risk Retention Group is an alternative risk transfer entity created by the federal Liability Risk Retention Act. RRGs must form as liability insurance companies under the laws of at least one state – its charter state or domicile.

operations." [ECF No. 1-D at 6]. It is alleged that information available to the Defendants indicated that contractors such as Plaintiff, should be quoted in the "PCIC group program," which included coverage for roofing, instead of the lower coverage "PCA group program," which did not include roofing coverage [ECF No. 1-4 at 6]. Each of these programs would have provided insurance through PCIC, a distinct entity from the "PCIC group program." [ECF No. 1-4 at 6]. Plaintiff, despite needing roofing coverage, was quoted in the "PCA group program," not the "PCIC group program."

The application submitted to PCA contained a signature and initials purported to be Plaintiff's, but the Plaintiff alleges he never signed the application [ECF No. 1-4 at 7]. Furthermore, Plaintiff states he never authorized any of the Defendants to initial or sign the application on his behalf [ECF No. 1-4 at 7]. The application included warranties, which Coronel had not reviewed with Plaintiff [ECF No 1-4 at 7]. These warranties were to be initialed by Sherman, however the initials contained in the application were not those of the applicant, Plaintiff, and as a result were "potentially incompatible" with Plaintiff's operations [ECF No. 1-4 at 7].

On May 20, 2011 or shortly thereafter, Defendants confirmed with Plaintiff that liability coverage had been obtained for his operations, and they requested a premium for the insurance. Plaintiff submitted full payment of $1064.00 to the Agency for the premium but did not receive a copy of the insurance policy until sometime after August 4, 2011 [ECF No. 1-4 at 7]. The policy which was ultimately delivered to Plaintiff contained exclusions that were not referenced in the application for membership with PCA nor discussed between the parties [ECF No. 1-4 at 7].

3

On May 20, 2011 Plaintiff entered into a contract with JnJ Holdings, LLC to perform renovations at the property located at 94 Estella Avenue, Pittsburgh, Pennsylvania 15211 [ECF No. 1-4 at 7]. On August 4, 2011, Brett Frischolz, an independent contractor, died after falling from scaffolding erected by Plaintiff [ECF No. 1-4 at 8]. Thereafter, the estate of Brett Frischolz commenced an action against Plaintiff, JnJ Holdings, LLC, and the principal of JnJ Holdings, Kirk Williams [ECF No. 1-4 at 8]. PCIC offered a defense to the action on behalf of Plaintiff but commenced a declaratory judgment action on October 22, 2012 alleging Plaintiff's operations were roofing operations and therefore excluded under the PCA Group policy [ECF No. 1-4 at 8].

Plaintiff has retained counsel to defend against the declaratory judgment [ECF No. 1-4 at 8]. Plaintiff alleges that whether or not coverage is found to exist for the August 4, 2011 accident, he has been damaged because of Defendants' conduct and omissions [ECF No. 1-4 at 10]. Because of the PCIC declaratory judgment action, there is the potential that Plaintiff will not have the appropriate liability coverage to cover the August 4, 2011 accident, and at the very least, Plaintiff has incurred expenses and harm due to Defendants' actions. The harms Plaintiff has sustained include anxiety relating the declaratory judgment, a possible judgment against Plaintiff in the underlying case, time away from his self-employment, and involvement with the PCIC filed cases [ECF No. 1-4 at 10-11].

Additionally, Plaintiff did not have the opportunity to secure appropriate insurance coverage or elect not to participate in certain operations at the 94 Estella Avenue project because of the untimely delivery of the policy to Plaintiff [ECF No. 1-4 at 11]. Plaintiff alleges that his opportunity to resolve the wrongful death suit against him has been lost because PCIC rejected the policy limits demand made by the Frischolz Estate while pursuing the declaratory judgment

4

action [ECF No. 1-4 at 11]. Finally, as a result of Defendants' actions, Plaintiff's personal assets are exposed [ECF No. 1-4 at 11].

## II. Standard of Review.

In Thompson v. Real Estate Mortgage Network, No. 12-3828, 2014 WL 1317137 (3d Cir. Apr. 3, 2014), the Third Circuit Court of Appeals recently stated that in ruling on a Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted:

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); see also Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir. 2013).

Id. at *2. Further, in ruling on a Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted, a court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, n.8 (2007). Additionally, where, as here, exhibits are attached to the Complaint by the plaintiff, when deciding a motion to dismiss, courts can consider these exhibits in additional to the allegations contained in the complaint.

5

Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993).

Furthermore, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. As explained in Phillips, "[w]e have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002)).

## III. Discussion

### A. Economic Loss Doctrine

Defendants argue that the negligence claims set out in Counts I, II, and III of Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted because they are barred by the Economic Loss Doctrine. The Economic Loss Doctrine in Pennsylvania "'provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage'." Azur v. Chase Bank, USA, Nat. Ass'n, 601 F.3d 212, 222 (3d Cir. 2010) (quoting Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 175 (3d Cir. 2008). "The doctrine 'is concerned with two main factors: foreseeability and limitation of liability'." Id. (quoting Adams v. Copper Beach Townhome Cmtys., L.P., 816 A.2d 301, 305 (Pa. Super. 2003). In discussing the doctrine, the Pennsylvania appellate court explained, "To allow a cause of action for negligent cause of purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action. Such an outstanding burden is clearly inappropriate and a

6

danger to our economic system." Id. (quoting Aikens v. Baltimore & Ohio R. Co., 501 A.2d 277, 279 (Pa. Super. 1985). Thus, Defendants argue that Plaintiff's negligence claims are barred.

There is an exception to the Economic Loss Doctrine for professional negligence claims. In some cases professionals may be sued in tort where a contract is at issue. However, Defendants assert that the Professional Negligence Claims exception cannot apply here due to the fact that pursuant to Pa. R. Civ. P. 1042.1 ("Professional Liability Actions. Scope. Definition"), insurance brokers and agents are not among the list of enumerated professionals against whom a professional liability action may be initiated. In other words, insurance agents and brokers are not considered "professionals" under the law and, therefore, the Defendants in this case are shielded from the negligence claims by way of the Economic Loss Doctrine because the exception does not apply. Defendants assert Counts I, II, and III should be dismissed with prejudice under the Economic Loss Doctrine.

In response, Plaintiff notes that Pennsylvania courts have recognized this exception to the Economic Loss Doctrine for claims of professional negligence in many cases. Plaintiff asserts that several Pennsylvania courts have characterized claims against insurance brokers for failing to procure proper coverage as professional negligence claims. In Ridgeway Court, Inc. v. James J. Canavan Ins. Associates, Inc., 501 A.2d 684, 685-87 (Pa. Super. 1985) the court described the claim brought against the defendant for failing to "provide [plaintiff] with full and adequate liability insurance coverage" as "an action for professional negligence." Plaintiff explains that although the claim was dismissed for insufficient evidence, the court recognized the professional negligence claim as viable against an insurance broker.

Plaintiff notes that "Pennsylvania jurisprudence has similarly characterized as 'professional negligence' those claims which have been filed against insurance brokers or agents for procuring inadequate coverage." AJT Props., LLC v. Pa. Lumbermens Mut. Ins. Co., No. 04 CV 5103, 2009 WL 1904103, at *8 (Pa. Com. Pl. 2009). Furthermore, Plaintiff states courts have recognized that insurance brokers must conform to the "standard of care required of those rendering professional services" and that "[i]t is obvious from the statutes that the commonwealth deems an insurance agent to be a professional skilled in the business of insurance matters." Swantek v. Prudential Prop. & Cas. Ins. Co., 48 Pa. D. & C.3d 42, 45, 47 (Pa. Com. Pl. 1988).

Plaintiff relies on more recent cases to support the existence of a professional standard of care for insurance brokers and agents. In a 2003 case, the Pennsylvania Appellate court held an insurance agent "is required to exercise the skill and knowledge normally possessed by members of that profession to make sure that the coverage sought by the insured is the coverage received." Pressley v. Travelers Prop. Cas. Corp., 817 A2d 1131, 1134-35 (Pa. Super. 2003). The Pressley Court found that the broker was negligent and therefore "liable for any loss of coverage" under Restatement (Second) of Torts § 299A, ("Undertaking in Profession or Trade"). Furthermore, both the Western District and Eastern District of Pennsylvania have recognized this standard of care for insurance brokers. See Stern Family Real Estate P'ship v. Pharms. Mut. Ins. Co., No. 06-130, 2007 WL 951603, at *4 n.11 (W.D. Pa. Mar. 27, 2007); Chetty Holdings, Inc. v. NorthMarq Capital, LLC, No. 11-4640, 2013 WL 1721733, at *7 (E.D. Pa. Apr. 22, 2013) (insurance agents are among a group of professionals "subject to a duty as licenses professionals pursuant to Section 299A.")

With respect to Pa. R. Civ. P. 1042, Plaintiff asserts that Rule 1042 does not speak to Plaintiff's ability to bring a professional negligence claim in accordance with Restatement of Torts § 299A, but rather that it only imposes the requirement of obtaining a certificate of merit when bringing a professional liability claim against one of the professionals listed under the rule. Thus, insurance brokers or agents not being listed under Rule 1042 is not dispositive of Plaintiff's ability to bring a professional negligence claim against Defendants.

We agree with Plaintiff's argument that Pa. R. Civ. P. 1042 does not preclude the assertion of a professional negligence claim against insurance brokers. In addition, we find it significant that under Pennsylvania law insurance brokers are held to a standard of care which requires them to "exercise the skill and knowledge normally possessed by members of that profession" and failure to do so renders them "liable for any loss of coverage." Pressley, 817 A.2d at 1138.

In particular, we find persuasive the Court of Common Pleas of Pennsylvania discussion in Rapidigm, Inc. v. ATM Mgmt. Servs., LLC, 63 Pa. D. & C.4th 234 (Pa. Com. Pl. 2003) regarding the application of the Economic Loss and Gist of the Action Doctrine to a professional negligence claim against a computer consultant. The Rapidigm Court explained, "The application of the gist of the action or the economic loss doctrines to professional negligence causes of action would be inconsistent with recent case law (See e.g. Gorski v. Smith, [citation omitted]) which gives a broad reading to prior case law allowing a client to bring both breach of contract and professional negligence actions based on the professional's failure to exercise proper skill and care." Rapidigm, 63 Pa. D & C.4th at 240-241. The court then noted that professional negligence actions are recognized under the Restatement (Second) of Torts § 299A

9

which states, "Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." Id. at 241.

The Rapidigm Court then explained that although, thus far, the Pennsylvania courts have only allowed professional negligence claims to be maintained against professionals enumerated under Pa. R. Civ. P. 1042, they could not locate any state appellate case law addressing whether professional negligence claims should be restricted to this enumerated list. See Id. at 241. According to the Rapidigm Court, whether or not to restrict professional negligence claims in this way "depends on whether parties contracting with service providers should receive the protections of tort law or whether their rights should be governed solely by the terms of their agreement with the service provider." Id. at 242. Further, the apparent purpose of professional negligence actions, according to the Rapidigm Court, is the inability of certain service providers to guarantee the outcome of their service. See Id. at 243. Instead of guaranteeing an outcome, certain service providers agree "to exercise skill and knowledge normally possessed by members of the profession." Id.

In this case, Plaintiff's allegations of negligence focus on whether Defendants exercised the standard of care required for their profession by, among other things, submitting an inaccurate application, procuring insurance without a Pennsylvania license, and executing Plaintiff's signature without authorization. Indeed, Counts I, II and III do not focus on the issue of whether the insurance policy procured by Defendants conformed to what was promised in the contract between the parties. In this case, contract law does not provide sufficient protection to

10

Plaintiff as a client of the insurance broker Defendants. Thus, we find that Plaintiff's alleged negligence claims are claims for professional negligence and fall within the exception to the Economic Loss Doctrine. Therefore, Plaintiff's negligence claims are not barred by the Economic Loss Doctrine.

### B. Gist of the action

Defendants next argue that the negligence claims set out in Count I, II, and III of Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted because they are barred by the Gist of the Action Doctrine. The Gist of the Action "[D]octrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. 2002). In some circumstances, "it is possible that a breach of contract also gives rise to an actionable tort[.] To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." Pediatrix, 602 F.3d at 548 (alteration in original) (quoting Id.)

"[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 103 (3d Cir. 2001) (quoting Redevelopment Auth. of Cambria County v. International Ins. Co., 685 A.2d 581, 590 (Pa. Super. 1996) (en banc). "In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by

the larger social policies embodied in the law of torts.'" Id. at 104 (quoting Bash v. Bell Telephone Co., 601 A.2d 825, 830 (Pa. Super. 1992).

The Gist of the Action Doctrine bars "tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." Wilmington Trust Co. v. Cnty. of Allegheny, 640 F.Supp.2d 643, 648 (W.D. Pa. 2009) (citing eToll, 811 A.2d at 19).

"When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F.Supp.2d 644, 651 (W.D. Pa. 1999). The gist of the action test, "as its name suggests, requires the court to focus on the substance of the dispute, or, more colloquially, to ask the question, "What's this case really about?" The doctrine deals less with specific enumerated "duties" than with the parties' conduct as it relates to the contract and the tort alleged." Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 550 (3d Cir. 2010).

Defendants assert that Plaintiff's claims arise only out of the alleged contract between Plaintiff and the Agency, and any of Defendants' liability arises out of this contract. Defendants explain that had there been no contract, no obligation would exist for the Agency to take action to procure coverage for Plaintiff. Next, Defendants assert that the parties' obligations are not defined by the larger social policies embodied in the law of torts but instead are defined by the contract. Further, according to Defendants, the Complaint does not allege any duties which

surpass the duties imposed by the contract. Defendants argue that Plaintiff's "tort claim essentially duplicates his contract claim being based on the contention that defendants failed to obtain the appropriate and requested insurance coverage for Sherman's operations." [ECF No. 5 at 8]. Thus, Defendants assert that the gist of the action is contractual, and therefore, Plaintiff's negligence claims should be dismissed with prejudice.

In Response to Defendants' assertions, Plaintiff argues that the negligence claims it brings against Defendants are exempt from the Gist of the Action Doctrine because they are rooted in professional negligence. Plaintiff notes that the Rapidigm Court stated, "Under settled Pennsylvania law, a client may bring both a contract and a tort action against a professional based on allegations that he or she failed to provide the client with professional services consistent with those expected in the profession." [ECF No. 7 at 7] (citing Rapidigm, 63 Pa. D. & C. 4th at 239). Plaintiff also points to Dardzinski v. Foley Ins. Agency, Inc., No. 04141 (Phila. County Com. Pl. Aug. 25, 2009) where the court held that the "economic loss rule and gist of the action doctrine do not bar tort recovery to claims involving a professional's failure to exercise the proper standard of care, even if the claim is arising out of the contract."

Plaintiff also argues that Pennsylvania law imposes additional requirements on the Defendants' behavior beyond those obligations imposed by the contract between Plaintiff and Defendants. Under 40 P.S. § 991.1514, ("Duty of agent or broker to obtain license"), "No person, firm, association or corporation shall act or aid in any manner in soliciting, negotiating or procuring liability insurance in this Commonwealth for a risk retention group unless such, firm, association or corporation is licensed..." Thus, Plaintiff argues that had Coronel complied with this provision, Plaintiff could have obtained insurance from a licensed producer who would have

procured the coverage specifically requested. With respect to John Brown, Plaintiff argues that had Brown complied with 40 P.S. § 991.1514(c) and informed him "about the consequences of placing coverage through a risk retention group," he could have avoided the possibility that he would be ineligible for the state's insurance insolvency guarantee funds. Plaintiff asserts that this requirement to inform arises under Pennsylvania law independent of any contractual duty.

Finally, Plaintiff argues that Defendants undertook a duty to procure adequate insurance coverage for him; therefore the law requires that Defendants "exercise the skill and knowledge normally possessed by members of their profession" in providing adequate insurance coverage. Plaintiff asserts that failure to conform to this standard renders Defendants liable for any loss of coverage, separate from any contractual liability. In addition to any liability imposed by the contract, "the law holds the Defendants responsible for their failure to render their services in accordance with the standard imposed on them as professionals." [ECF No. 7 at 8]

As discussed above, the Rapidigm Court considered the application of the Gist of the Action Doctrine and Economic Loss Doctrine to suits against professionals who are not enumerated under Pa. R. Civ. P. 1042. Notably, the court observed that "[t]o date, the Pennsylvania Courts have allowed professional negligence actions to be maintained only against certain licensed professionals." Rapidigm, 63 Pa. D. & C.4th at 241. As noted by Defendants, insurance brokers and agents are not among the list pursuant to Pa. R. Civ. P. 1042.

The issue then is whether the Gist of the Action Doctrine applies to negligence claims asserted against professionals not enumerated under Pennsylvania Rules of Civil Procedure 1042.1. Having found that a professional negligence claim is a viable claim against professionals not listed under Rule 1042, and thus, there exists an exception to the Economic

14

Loss Doctrine, we also find that there is an exception to the Gist of the Action Doctrine to negligence claims asserted against professionals not listed under Rule 1042. Thus, Plaintiff's claims are not barred by the Gist of the Action Doctrine.

Furthermore, taking the facts alleged in Plaintiffs Complaint as true, the issue is whether Defendants were negligent by not exercising the skill and knowledge normally possessed by members of their profession, not whether Defendants breached a contract that existed between the parties. In other words, the gist of Plaintiff's action is in tort, not contract. The focus of Plaintiff's negligence claims implicates the skill, expertise, and special knowledge that the law requires an insurance broker or agent to exercise. Significantly, Plaintiff alleges negligence based on a failure to comply with duties imposed by Pennsylvania statute regarding licensing and notice requirements by insurance brokers. While it is true that a contract existed between Plaintiff and Defendants, we find that the Defendants' contractual obligations to acquire an insurance policy that covered Plaintiff's operations are only tangential to the alleged negligent mishandling of Plaintiff's insurance policy.

### C. Violation of Pennsylvania Statutes

Defendants argue that Plaintiff's Counts I and II for negligence against Coronel and Brown respectively should be dismissed because they are, in part, based on an alleged violation of 40 P.S. §§ 991.1514 ("Duty of agent or broker to obtain license") and 991.1505 ("Notice and prohibited acts"). Section 991.1514(a)(1) states, in relevant part, "No person, firm, association or corporation shall act or aid in any manner in soliciting, negotiating or procuring liability insurance in this Commonwealth for a risk retention group unless such person, firm, association or corporation is licensed either as an insurance agent . . . or as an insurance broker." Section

15

991.1505 states, in relevant part, "Every application form for insurance from a risk retention group and every policy issued by a risk retention group shall contain, in ten-point type on the front page and the declaration page, the following notice: NOTICE This policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group."

Defendants assert that Sections 991.1514 and 991.1505 do not provide a private right of action because under Pennsylvania Law there is no enforcement of statutes by private action when the legislature commits its enforcement to a government body or official. Thus, because Sections 991.1514 and 991.1505 authorize the insurance department to investigate, issue subpoenas, conduct depositions and hearings, issue orders, impose penalties, and seek injunctive relief for the violation of Sections 991.1514 and 991.1505, there is no private right of action.

Regardless of the existence of a private right of action, Defendants assert that Plaintiff has not alleged facts establishing that a failure to comply with Section 991.1505 was the cause of Plaintiff's damages. Defendants also assert that Coronel's lack of a Pennsylvania Insurance License in violation of Section 991.1505 was not a cause of Plaintiff's damages. Therefore, Defendants request that paragraphs 38(h) and (i), alleging Coronel's violation of Sections 991.1514 and 991.1505, and 41(f) and (g), alleging Brown's violation of Sections 991.1514 and 991.1505, be stricken from the Complaint.

Plaintiff responds by explaining that he is not claiming that he can maintain a private right of action to enforce Sections 991.1514 and 991.1505, but rather that he uses Defendants' failure to comply with the statutes as examples of Defendants' negligence, such as demonstrating

16

that Defendants were negligent *per se* for violating the statutes. With respect to Coronel's lack

of a license, Plaintiff argues that Coronel's failures, such as procuring an insufficient policy,

signing the application for Plaintiff, and not delivering the policy in a reasonable time, all could

have been avoided had Coronel become more familiar with the Pennsylvania Insurance Laws

through the licensing procedure.

We understand Plaintiff's Complaint to allege that violation of Sections 991.1514 and

991.1505 is indication of Defendants' negligence, not that Plaintiff is bringing a claim which is

predicated on enforcement of the statutes. Therefore, Defendants' affirmative defense and

Motion to Dismiss in this regard is moot. With respect to Defendants' argument that Plaintiff

has not alleged causation between the violation of the statutes and Plaintiff's harm, we find that

Plaintiff has provided sufficient facts to draw a reasonable inference that Defendants could be

liable for the harm alleged.

### D. Negligent supervision

In Count III Plaintiff alleges that the Agency was negligent in placing, Coronel, an

unqualified and unlicensed employee to solicit information from a client and procure insurance

on his behalf. Plaintiff alleges that because of the Agency's negligent conduct he has sustained

damages.

Defendants argue that Count III for negligence against the Agency is based on the

Agency's negligent supervision of Coronel. In order to recover under a claim of negligent

supervision, a plaintiff must prove that his loss resulted from (1) a failure to exercise ordinary

care to prevent an intentional harm by an employee acting outside the scope of his employment;

(2) that is committed on the employer's premise; (3) when the employer knows or has reason to

17

know of the necessity and ability to control the employee. See Belmont v. MB Investment Partners, Inc., 708 F.3d 470, 487-88 (3d Cir. 2013). The Belmont Court explained, "A claim for negligent supervision provides a remedy for injuries to third parties who would otherwise be foreclosed from recovery under the principal-agent doctrine of *respondeat superior* because the wrongful acts of employees in these cases are likely to be outside the scope of employment or not in furtherance of the principal's business." Id. at 489.

Defendants argue that Plaintiff has not alleged facts to support a plausible finding that the Agency did not exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of employment. Thus, Defendants argue that Plaintiff has failed to allege a claim for negligent supervision, and therefore, Count III of the complaint should be dismissed with prejudice.

We do not find that Plaintiff has alleged a claim for negligent supervision but rather a claim for professional negligence. Nowhere in Plaintiff's Complaint is it indicated that Count III is a claim for negligent supervision. Indeed, Plaintiff indicates that in order to comply with Pennsylvania Rules of Civil Procedure he has included in the Complaint that the Agency was an Illinois-licensed insurance agency and that, among other things, Plaintiff is asserting a professional liability claim against the Agency. Therefore, it is not dispositive of Plaintiff's claim whether or not he has alleged that the Agency did not exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of employment.

Accordingly, for the reasons set forth above, we find that Plaintiff's Complaint with respect to Counts I, II, and III for negligence contain sufficient facts to state plausible claims for

relief; therefore we will deny Defendants Motion to Dismiss Plaintiff's negligence claims set forth in Count I, II, and III.

### E. Vicarious Liability – Count IV

Count IV of Plaintiff's Complaint alleges that the Agency is vicariously liable for the conduct of Coronel and Brown, and at all times Coronel and Brown were acting in the scope of employment and/or as agents and/or representatives of the agency.

Defendants argue that Count IV of Plaintiff's Complaint fails to state a claim because there is no separate cause of action for *respondeat superior* liability. District Courts have found that under Pennsylvania law the "doctrine of *respondeat superior* does not establish a separate tort, but merely a principle by which employers can be held liable for the tortious acts of their employee." See Peek v. Philadelphia Coca-Cola Bottling Co., No. 97-3372, 1997 WL 399379, at *1 n. 1 (E.D. Pa. Jul. 16, 1997). District Courts have also explained that *respondeat superior* "merely connotes a doctrine of imputation once an underlying theory of liability has been established. It is not a separate cause of action." Care v. Reading Hosp. & Med. Ctr., No. 04121, 2004 WL 728532 (E.D. Pa. Mar. 31, 2004).

Plaintiff responds by arguing that vicarious liability exists as a separate cause of action from personal negligence in Pennsylvania. Plaintiff explains that the cases cited by Defendants in support of their argument that Count IV is not a viable claim in federal court either directly or through federal question jurisdiction, are unreported, and fail to rely on Pennsylvania cases in support of the conclusions asserted. Plaintiff notes that our case at issue was removed to Federal Court based on diversity jurisdiction, which makes this case procedurally and conceptually similar to Sabric v. Martin, No. 3:09-2237, 2012 WL 1952197 (M.D. Pa. May 30, 2012) (rev'd

19

on other grounds 532 Fed. App'x 286 (3d Cir. 2013). Plaintiff explains that the Sabric Court

held, "Claims for vicarious liability and direct negligence are two distinct claims." 2012 WL

1952197 at *2 n.1. Plaintiff then explains that the Sabric Court is more persuasive than the cases

cited by Defendants because the Sabric Court "took seriously the state court cases holding that

vicarious liability and negligence can be brought as separate claims." [ECF No. 7 at 10]

Furthermore, Plaintiff argues that Count IV of the Complaint incorporates the preceding

paragraphs of the Complaint, which consisted of claims of direct negligence against the

Agency's employees, Coronel and Brown, individually. Therefore, according to Plaintiff, he has

stated a viable claim for vicarious liability because it is based on the liability of the actions of

Coronel and Brown, thereby satisfying the requirement of an underlying claim which is imputed

to the employer.

Plaintiffs Complaint states, "The agency is vicariously liable for the conduct of

Defendants Coronel and Brown." Thus, because the preceding paragraphs of the Complaint are

incorporated in Count IV, we find that Count IV is not a separate cause of action for *respondeat*

*superior* but rather a claim against the Agency, which is vicariously liable, for the negligent

actions and omissions of Coronel and Brown as set forth in the Complaint's paragraphs 1

through 45. Therefore, we deny Defendants' Motion to Dismiss Count IV as moot, as Plaintiff's

Complaint alleges sufficient facts to state a plausible claim for relief based on the vicarious

liability of Agency for the conduct of its employees Coronel and Brown.

**IV. Conclusion**

For the reasons set forth above, Defendants' Motion to Dismiss is denied with

respect to negligence against Coronel (Count I), negligence against Brown (Count II), negligence

against the Agency (Count III), and vicarious liability against the Agency (Count IV). An appropriate Order follows:

August _5_, 2014

_Maurice B. Cohill_
Maurice B. Cohill, Jr.
Senior District Court Judge